**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| SOCIETY FOR HUMAN RESOURCE MANAGEMENT, <br><br> *Plaintiff*, <br><br> v. <br><br> ZAYO GROUP HOLDINGS, INC., <br><br> *Defendant*. | Case No. 1:26-cv-00914-AJT |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ZAYO GROUP**
**HOLDINGS' MOTION TO DISMISS PLAINTIFF SHRM'S COMPLAINT**

**TABLE OF CONTENTS**

I.    BACKGROUND .................................................................................................. 2

II.    LEGAL STANDARD ......................................................................................... 6

III.    ARGUMENT..................................................................................................... 8

    A.    Defendant Is Not a Party to the Contract Underlying the Breach...................................... 8

    B.    Plaintiff Should Not Be Granted the Right to Replead Against Defendant Because Any Such Amendment Would Be Futile........................................................................ 10

        1.    The 2022 Service Order Incorporates All of the Terms of the MSA. ........................... 10

        2.    Plaintiff's Claim is Barred Under the Contractual Limitations Period........................ 12

        3.    Plaintiff's Claim is Barred by the Contract's "Force Majeure" Clause. ...................... 14

        4.    The MSA Precludes Plaintiff from Establishing Damages. ......................................... 14

IV.    CONCLUSION................................................................................................. 16

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................................... 7

*Aziz v. Alcolac, Inc.*,
658 F.3d 388 (4th Cir. 2011) ....................................................................................... 6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................................................... 6

*Boykin Anchor Co. v. AT&T Corp.*,
No. 5:10-CV-591-FL, 2011 WL 1456388 (E.D.N.C. Apr. 14, 2011) ........................... 9

*Creamer v. Smith Cnty. Sheriff's Dep't*,
468 F. App'x 911 (10th Cir. 2012) ............................................................................. 10

*Dish Purchasing Corp. v. Suncraft Technologies, Inc.*,
No. 22-cv-00127-CMA-KLM, 2023 WL 1801336 (D. Colo. Feb. 7, 2023) ............... 9

*Francis v. Giacomelli*,
588 F.3d 186 (4th Cir. 2009) ....................................................................................... 7

*Giarratano v. Johnson*,
521 F.3d 298 (4th Cir. 2008) ....................................................................................... 6

*Hanback v. DRHI, Inc.*,
94 F.Supp.3d 753 (E.D. Va. 2015) .............................................................................. 7

*Heimeshoff v. Hartford Life & Acc. Ins. Co.*,
571 U.S. 99 (2013) ...................................................................................................... 14

*Hepp v. United Airlines, Inc.*,
540 P.2d 1141 (Colo. App. 1975) ................................................................................ 7

*Jean-Baptiste v. Apple Fed. Credit Union*,
Case No. 1:18-cv-188, 2018 WL 10758939 (E.D. Va. May 21, 2018) ....................... 7

*Liquid Magnetix Corp. v. Therma-Stor LLC*,
No. 13–cv–3151–WJM–KMT, 2014 WL 1389984 (D. Colo. Apr. 9, 2014) ...... 12, 13

*McGowan v. Wal-Mart Stores*,
757 Fed. App'x 786 (10th Cir. 2019) ......................................................................... 14

iii

*Nelson v. State Farm Mut. Auto. Ins. Co.*,
   419 F.3d 1117 (10th Cir. 2005) ...................................................................... 13

*Order of United Commercial Travelers of America v. Wolfe*,
   331 U.S. 586 (1947)........................................................................................ 14

*Pennington v. Fluor Corp.*,
   19 F.4th 589 (4th Cir. 2021)............................................................................. 9

*Philips v. Pitt Cnty. Memorial Hosp.*,
   572 F.3d 176 (4th Cir. 2009)............................................................................ 8

*Plum Creek Wastewater Auth. v. Aqua-Aerobic Systems, Inc.*,
   597 F.Supp.2d 1228 (D. Colo. 2009) ............................................................. 12

*Siegle v. RE/MAX LLC*,
   No. 1:23-cv-03102-RMR-SBP, 2024 WL 4591370 (D. Colo. Sept. 23, 2024) .................... 7, 14

*United States ex rel. Carson v. Manor Care, Inc.*,
   851 F.3d 293 (4th Cir. 2017)........................................................................... 10

*United States v. Bestfoods*,
   524 U.S. 51 (1998).......................................................................................... 9

*Veolia Water Technologies, Inc. v. Antero Treatment LLC*,
   564 P.3d 1089 (Colo. App. 2024).................................................................... 11

*W. Distrib. Co. v. Diodosio*,
   841 P.2d 1053 (Colo. 1992) ........................................................................ 8, 16

*Watkins v. M2 Behav. Health of Virginia, LLC*,
   No. 3:24CV856, 2025 WL 1399193 (E.D. Va. May 14, 2025) ................................................ 8

## I.    __INTRODUCTION__

Like many contractual disputes, this matter can be readily resolved by reading the plain text of the operative contract.  Plaintiff Society for Human Resource Management ("SHRM") apparently would prefer the Court not do so because even a cursory review defeats its sole claim for breach of contract against Defendant Zayo Group Holdings, Inc. (hereinafter, "Defendant" or "Holdings") arising both from its failure to name the correct defendant—which should be Defendant's wholly owned subsidiary Zayo Group LLC ("Zayo LLC")—and the fact that its claim is explicitly barred by the terms of the contract between SHRM and Zayo LLC.

The Complaint is premised on Defendant's alleged breach of a May 25, 2022 Service Order Form, No. #2083498 (the "2022 Service Order").  According to Plaintiff, the alleged breach arises from Defendant's failure to provide internet services during a brief service outage that occurred from February 21 to February 22, 2025 (the "February 2025 outage").  *See* Complaint ("Compl."), ¶ 26.  Based on the approximately one-day outage from Friday through Saturday, SHRM now seeks nearly $400,000 in lost profits and revenue.  *See* Compl., ¶¶ 2, 30.

Yet SHRM's Complaint simply ignores two facts: (1) Defendant is not a party to the 2022 Service Order; the agreement is only between Plaintiff and Zayo LLC; and, (2) even if Defendant were somehow responsible for its subsidiary's contract, the 2022 Service Order explicitly incorporated all of the terms from an August 16, 2013 Master Service Agreement ("MSA") between Plaintiff and Zayo LLC, which definitively preclude this action.  Accordingly, Plaintiff's Complaint should be dismissed with prejudice.

*First*, Plaintiff's Complaint erroneously names Defendant in this action when Plaintiff only contracted with Defendant's subsidiary, Zayo LLC.  In short, Defendant cannot be held liable for

1

breaching a contract to which it was never party.  Nor can Defendant be held liable for the alleged actions of its subsidiary and Plaintiff has not pleaded any facts to suggest otherwise.

*Second*, even if Plaintiff could allege facts sufficient to assert liability against Defendant for a contract with its subsidiary, any claim would be barred by the terms of the contract itself which foreclose Plaintiff's claim for breach of contract due to: (1) a one-year contractual limitations term in the operative contract; (2) a force majeure clause excluding the factual basis for the breach; and (3) a contractual bar to the requested damages.  Moreover, this case should be dismissed with prejudice without leave to replead as to Defendant as any amendment would be futile.

For all these reasons, Defendant Zayo Group Holdings, by and through undersigned counsel, moves to dismiss SHRM's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.    BACKGROUND

Plaintiff SHRM, an Ohio nonprofit corporation, is "the world's largest membership organization dedicated to the practice of human resources management" and "provides education, research, professional, and advocacy-related guidance and information to over 340,000 members in approximately 180 countries."  Compl., ¶ 2.  In or around September 2013, Zayo LLC, a Delaware limited liability company that is Defendant's wholly owned subsidiary, began serving as Plaintiff's internet service provider pursuant to a contract, which consisted of the MSA, an August 15, 2013 Service Schedule Agreement ("2013 Service Schedule"), and an August 15, 2013 Service Order Form ("2013 Service Order").  *See id.*, Exs. A-C.  The MSA provided that its purpose was to "provide general terms, conditions, and a framework within which Customer may from time to time purchase certain telecommunications and related infrastructure services" from

Zayo LLC "for its use and/or resale to customers." *Id.*, Ex. A at 1.1. It further provided that "[a]dditional terms and conditions that apply to each type of Service are set forth in services schedules. . . and each such Service Schedule executed by Customer shall become a part of this Agreement." *Id.* Plaintiff and Zayo LLC executed the 2013 Service Schedule that same day which provided, in relevant part, that it was "subject to, and made a part of, that [MSA]. . ." Compl., Ex. B. Defendant was never a party to the MSA, 2013 Service Schedule, and 2013 Service Order. *See id.*, Exs. A-C.

In the MSA, Plaintiff and Zayo LLC contemplated the execution of one or more "Service Orders" which, collectively with the MSA and the Service Schedules, would constitute contracts for service, noting that "[e]ach accepted Service Order shall incorporate by reference, and shall be subject to, the terms and conditions of this Agreement and the applicable Service Schedule." *Id.*, Ex. A at 1.3. "Service Orders," in turn should "clearly set forth" basic terms like pricing and service type and "any *additional* specific terms for the Services." *Id.* (emphasis added). The MSA further outlined that in the event of any express conflict between the terms of the MSA and any Service Schedule or Service Order, the Service Order would take precedence over the other documents but "solely with respect to the Service covered by that Service Order," followed in turn by the Service Schedule with respect to the specific service, and ultimately by the terms of the MSA. *Id.*

The MSA further provided that it would remain in effect "for a period of five (5) years from the Effective Date. . . unless terminated earlier. . . and shall automatically renew for one (1) year periods thereafter . . . until either Party notifies the other Party of its intent not to renew the MSA at least (90) days prior to the end of the Initial Term or Any Renewal Term." *Id.*, Ex. A at 3.1. However, it further stated that "[n]otwithstanding the foregoing, in the event that any Service

3

Order remains in effect following such termination, th[e] MSA shall govern and continue in effect with regard to such Service Order until the termination of such Service Order." *Id.*

The MSA contained a number of important limitations that governed the contractual relationship between the parties to the contract. First, the Plaintiff and Zayo LLC contractually agreed to a one-year limitations period: "No cause of action under any theory which accrued more than one (1) year prior to the filing of a complaint alleging such cause action may be asserted by either Party against the other Party." Compl., Ex. A at 6.1.

Second, the MSA contained express disclaimers as to each party's liability to the other in the case of force majeure events, including but not limited to "fire." *See id.*, Ex. A at Art. 9.

Third, the MSA included additional explicit limitations on each party's entitlement to damages. It provided, in relevant part, that "Zayo [LLC]'s total liability for any and all causes and claims whether based in contract, warranty, negligence, or otherwise *shall be limited to the lesser* of (i) the actual direct damages sustained by Customer, or (ii) an amount equivalent to the total MRC [Monthly Recurring Charge]  received by Zayo [LLC] Customer over the preceding three (3) months for the Service affected." *See id.*, Ex. A at 6.1 (emphasis added). It also explicitly excluded any indirect, incidental, special, punitive, or consequential damages "arising out of, or in connection with" the agreement including "lost profits" and "lost revenue." *See id.*, Ex. A at 6.2. Moreover, the 2013 Service Schedule which was incorporated into the MSA provided a specific mechanism for assessing damages that limited Plaintiff's remedies to receiving service credits that "shall not exceed 50% of the MRC for the affected circuit" during a given month. Compl., Ex. B at 8.1. Finally, Plaintiff and Zayo LLC also agreed the interpretation of their contract would be governed by Colorado law. *Id.*, Ex. A at 10.2.

4

The Complaint alleges Defendant *Zayo Group Holdings* provided internet services to Plaintiff without incident until May 31, 2018, when Plaintiff, via written correspondence, purportedly terminated both the MSA and the 2013 Service Order. *See* Compl., ¶¶ 9-12 *and* Ex. D. Again, Defendant was never a party to the MSA and the 2013 Service Order. *See id.*, Exs. A-C. Plaintiff only contracted with Zayo LLC to act as its internet service provider. *Id.* Pursuant to the 2022 Service Order, Zayo LLC resumed providing Plaintiff with internet service for monthly recurring payments of $1,500. *Id.*, Ex. E. As with the MSA, 2013 Service Schedule, and 2013 Service Order, Defendant was not a party to the 2022 Service Order. *Id.*

Additionally, the 2022 Service Order explicitly states in the "Contract Details" section that the "Governing MSA" is the "Society for Human Resource Management MSA 2013-08-15[.]" *Id.*, Ex. E at 1. That is the same version of the MSA attached as Exhibit A to the Complaint and had governed all prior service arrangements between Plaintiff and Zayo LLC. Lest there be any doubt that Plaintiff and Zayo LLC intended for the terms of the MSA to continue to govern the 2022 Service Order, the 2022 Service Order explicitly states that the Service Order "shall be governed by and subject to the applicable contract documents between Customer and Zayo [LLC] referenced above" which includes only the MSA. *Id.*, Ex. E at 2.

As alleged in the Complaint, at 10:47 A.M. on February 21, 2025, Plaintiff experienced an internet service outage due to a fire in an underground vault that was allegedly "on premises owned, leased, or otherwise controlled by Defendant." Compl., ¶ 20. The internet service outage lasted for one day, and Defendant successfully restored internet service on February 22, 2025. *See id.*, ¶¶ 1, 20.

However, Plaintiff did not file this instant action until April 3, 2026, *one year and forty-two days* after the February 2025 outage. Plaintiff, ignoring that its action is not timely under the

MSA's one-year period of limitations, now seeks compensatory damages in an amount no less than $385,000 from Defendant on grounds that "Defendant breached the contract by failing to provide internet service on February 21 through 22, as required under the 2022 [Service Order]." *Id*., ¶ 26, ¶¶ 31-34.  The Complaint, however, is silent as to exactly *how* Defendant is liable for the purported breach of Plaintiff and Zayo LLC's agreement—to which Defendant was never a party—in connection with the February 2025 outage.  *See generally id*.  For example, Plaintiff has not pleaded any facts to suggest the account was assumed or that Defendant is vicariously responsible for the acts of its subsidiary.  *See generally id*.  Moreover, Plaintiff has not pleaded any facts or theory of recovery that would successfully overcome the express disclaimers and limitations in the parties' contract.  *See generally id*.

### III.   LEGAL STANDARD

A motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint. *See Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).  To survive a motion to dismiss, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] their claims across the line from conceivable to plausible."  *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).  Although courts must generally accept as true the allegations of a complaint, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a facially plausible claim for relief "will 'be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

6

"Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Dismissal is appropriate not only when a plaintiff fails to allege sufficient facts, but also when the complaint reveals legal deficiencies that preclude relief as a matter of law. A claim for breach of contract is appropriately dismissed if the contract is unambiguous with respect to all of the plaintiff's breach allegations and as such, the complaint makes clear that no breach occurred. *See Hanback v. DRHI, Inc.*, 94 F.Supp.3d 753, 760-61 (E.D. Va. 2015) (dismissal required where the plain meaning of the contract was clear and the complaint therefore failed to sufficiently allege breach). It is also appropriate where the plaintiff's own allegations demonstrate that the claim is time-barred or otherwise legally defective. *See Jean-Baptiste v. Apple Fed. Credit Union*, Case No. 1:18-cv-188, 2018 WL 10758939, at *1 (E.D. Va. May 21, 2018) (dismissing claim brought after period of limitations lapsed); *accord Siegle v. RE/MAX LLC*, No. 1:23-cv-03102-RMR-SBP, 2024 WL 4591370, at *2-3 (D. Colo. Sept. 23, 2024) (citing *Hepp v. United Airlines, Inc.*, 540 P.2d 1141, 1143 (Colo. App. 1975)) (dismissing action as untimely under one-year limitations period in franchise agreement governed by Colorado law).

To sustain a breach of contract action under Colorado law—the operative law governing the interpretation of the contract in this case—a plaintiff must prove "(1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff." *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (internal citations omitted). In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), beyond the facts asserted in a complaint, a court may "also consider documents attached to the complaint, *see* Fed. R. Civ. P. 10(c), as well as those

7

attached to the motion to dismiss, so long as they are integral to the complaint and authentic."

*Philips v. Pitt Cnty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006)).

## IV.   <u>ARGUMENT</u>

Plaintiff's sole claim in the Complaint for breach of contract against Defendant must be dismissed because it fails to state any cognizable claim upon which relief can be granted under Rule 12(b)(6).  First, Plaintiff has sued Defendant for damages arising from a contract to which Defendant was not a party and failed to allege any facts explaining why Defendant would be responsible for the contractual obligations of its subsidiary, Zayo LLC.  Second, even if Plaintiff could allege facts sufficient to assert liability against Defendant for a contract with its subsidiary, any claim would be barred by the terms of the contract itself which foreclose Plaintiff's claim for breach of contract due to: (1) a one-year contractual limitations term in the operative contract; (2) a force majeure clause excluding the factual basis for the breach; and (3) a contractual bar to the requested damages.  Moreover, this case should be dismissed with prejudice without leave to replead as to Defendant as any amendment would be futile.

### A.   **Defendant Is Not a Party to the Contract Underlying the Breach.**

It is axiomatic that an action for breach of contract will not lie against an entity that was not a party to the contract alleged to have been breached.  *See Watkins v. M2 Behav. Health of Virginia, LLC*, No. 3:24CV856, 2025 WL 1399193, at *3 (E.D. Va. May 14, 2025) ("Generally, in Virginia, a defendant cannot be held liable for breaching a contract to which they are not a party.") (citations omitted); *accord Dish Purchasing Corp. v. Suncraft Technologies, Inc.*, No. 22-cv-00127-CMA-KLM, 2023 WL 1801336, at *5 (D. Colo. Feb. 7, 2023) (noting that the court could not find any authority to support a breach of action claim against a nonparty).

8

It is equally axiomatic that that a parent corporation is not liable for the actions of its subsidiaries. *See Pennington v. Fluor Corp.*, 19 F.4th 589, 598 (4th Cir. 2021) ("As the Supreme Court has put it, '[i]t is a general principle of corporate law deeply "ingrained in our economic and legal systems" that a parent corporation. . . is not liable for the acts of its subsidiaries.'") (quoting *United States v. Bestfoods*, 524 U.S. 51, 61 (1998)); *see also Boykin Anchor Co. v. AT&T Corp.*, No. 5:10-CV-591-FL, 2011 WL 1456388, at *4 (E.D.N.C. Apr. 14, 2011) ("Plaintiff's attempts to treat all defendants as one 'corporate family' for purposes of this lawsuit is unfounded.").

Yet here, Plaintiff runs afoul of not one but both axioms. The Complaint is deficient on its face because Defendant is not a party to the 2022 Service Order and, thus, could not have breached it. Even the most cursory examination of the 2022 Service Order, which is attached to the Complaint and which Plaintiff contends governs the instant dispute, reveals that Plaintiff erroneously named Defendant, the parent entity of Zayo LLC, as the breaching party. *See* Compl., ¶ 26 ("Defendant breached the contract by failing to provide internet service on February 21 through 22, as required under the 2022 [Service] Order Form."); *compare with* Ex. E (2022 Service Order executed by Plaintiff and Zayo Group LLC). Accordingly, the Complaint fails to state a claim upon which relief can be granted.

Nor does Plaintiff allege any theory of liability or present any legal authority refuting the well-settled principle that a parent corporation is not liable for the actions of its subsidiaries. Indeed, Plaintiff does not allege that any novation or assignment occurred or facts sufficient to pierce the corporate veil. *See generally Compl.* In the absence of any theory of liability or legal authority that would permit Plaintiff to hold Defendant liable for its subsidiary's alleged breach of contract, Plaintiff's complaint must be dismissed.

Moreover, even if Plaintiff could replead facts to support Defendant's liability for the contractual obligations of its subsidiary, any such amendment would be futile for all the reasons set forth below. Accordingly, Defendant respectfully requests that the Court dismiss the Complaint without leave to amend. *See United States ex rel. Carson v. Manor Care, Inc.*, 851 F.3d 293, 305 n.6 (4th Cir. 2017) (stating that, "when a complaint is incurable through amendment, dismissal is properly rendered with prejudice and without leave to amend" and finding that "any amendment would be futile" where there was "no proffer to the district court, nor to this Court, of how [the] complaint could be amended to overcome the first-to-file bar") (citations and internal quotations omitted); *Creamer v. Smith Cnty. Sheriff's Dep't*, 468 F. App'x 911, 911–12 (10th Cir. 2012) (dismissing plaintiff-appellant's appeals "as frivolous" where the statute of limitations barred all but one of the claims, the remaining claim was inadequately pleaded, and allowing leave to amend would be futile).

**B.      Plaintiff Should Not Be Granted the Right to Replead Against Defendant Because Any Such Amendment Would Be Futile.**

Even if Plaintiff were given leave to amend the Complaint, the amended pleading would still fail to state a cognizable claim upon which relief may be granted, due to (1) a contractual limitations period for claims; (2) a force majeure provision in the contract; and (3) the contract's liability limitations. Altogether, Plaintiff's claim against Defendant with respect to the 2022 Service Order is incurable and should be dismissed with prejudice.

**1.      The 2022 Service Order Incorporates All of the Terms of the MSA.**

The 2022 Service Order that forms the predicate of the Complaint explicitly incorporates the terms of the August 15, 2013 MSA. And those terms are fatal to Plaintiff's Complaint. Under "Contract Details" on Page 1, the 2022 Service Order lists the "Governing MSA" as "Society of Human Resources Management MSA 2013-08-15" which is the same version of the MSA attached

10

as Exhibit A to the Complaint.  Compl., Ex. E at 1.  This is further buttressed by the unequivocal statement on Page 2 of the 2022 Service Order that the agreement "shall be governed by and subject to the applicable contract documents between Customer and Zayo [LLC] *referenced above*," which include only the MSA.  *Id*., at 2 (emphasis added).  This language was not hidden, buried, disguised, or in any way engineered to deceive in the executed 2022 Service Order.  Plaintiff, a sophisticated entity, could have negotiated different terms but did not do so.  Plaintiff's allegation that it had asked to terminate the MSA at an earlier point in time is of no moment.  Whether or not the original MSA had expired or terminated, the Parties clearly intended to incorporate the terms of that document when they executed the 2022 Service Order.  Indeed, the Complaint readily acknowledges Plaintiff was fully aware of the terms set forth in the MSA and has not alleged any reason the Parties' clear intention to incorporate those terms by reference in the 2022 Service Order was invalid.

The 2022 Service Order's reference to the MSA is a textbook example of incorporation by reference.  *See Veolia Water Technologies, Inc. v. Antero Treatment LLC*, 564 P.3d 1089, 1102 (Colo. App. 2024) ("[I]t has long been settled that contracting parties may incorporate contract terms by reference to another document.") (quoting *French v. Centura Health Corp*., 509 P.3d 443, 449 (Colo. 2022)).   For an incorporation by reference to be effective, "it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms" and "the terms to be incorporated generally must be clearly and expressly identified"; "[g]eneral or oblique references to a document to be incorporated, in contrast, are usually insufficient to support a finding that the document was incorporated by reference."  *Id*. (finding that terms in an email were effectively incorporated by reference to parties' change order).  Further, Colorado law permits contracting entities to incorporate by reference terms contained in

11

a separate or otherwise standalone document.  *See Plum Creek Wastewater Auth. v. Aqua-Aerobic Systems, Inc.*, 597 F.Supp.2d 1228, 1234-35 (D. Colo. 2009) (forum selection clause contained in contract between plaintiff wastewater authority and prime contractor were effectively incorporated by reference and binding upon defendant supplier where supplier's purchase order with prime contractor flowed down all applicable prime contract terms to supplier); *see also Liquid Magnetix Corp. v. Therma-Stor LLC*, No. 13–cv–3151–WJM–KMT, 2014 WL 1389984, at *2-4 (D. Colo. Apr. 9, 2014) (standard terms and conditions located on separate webpage were validly incorporated by reference in disputed purchase orders).

Here, the 2022 Service Order's reference to the document to be incorporated (*i.e.*, the MSA) were not only not "general or oblique": they could not have been any clearer or more direct. Plaintiff assented to the incorporation of the MSA, as evidenced by the signature of Mr. Sean Roddy, Plaintiff's chief financial officer.  Moreover, Plaintiff does not allege any other contractual terms that would supersede the MSA terms explicitly cited in the 2022 Service Order or that would otherwise govern the parties' obligations.  As such, Plaintiff should not be permitted to avoid the very contract terms that it accepted, including those unambiguously and validly incorporated by reference.  "A failure to educate oneself regarding the terms of an offer does not invalidate or excuse compliance with those terms to which a party is unaware. . . The law does not reward a commercial party for not reading and understanding a contract in its entirety before signing it." *Liquid Magnetix*, at *3 (internal citations omitted).

    **2.**      **Plaintiff's Claim is Barred Under the Contractual Limitations Period.**

Having established that the terms of the MSA were explicitly incorporated into the 2022 Service Order, Plaintiff's claim is barred by the contractual limitations period set forth in the MSA. Article 6.1 of the MSA which was incorporated by reference into the 2022 Service Order states,

"No cause of action under any theory which *accrued more than one (1) year prior* to the filing of a complaint alleging such cause of action may be asserted by either Party against the other Party." Compl., Ex. A at 6.1 (emphasis added). "Under Colorado law, an action for breach of contract accrues 'on the date the breach is discovered or should have been discovered by the exercise of reasonable diligence.'" *Nelson v. State Farm Mut. Auto. Ins. Co.*, 419 F.3d 1117, 1121 (10th Cir. 2005) (quoting Colo. Rev. Stat. § 13–80–108(6)). Here, Plaintiff plainly discovered the alleged breach of contract on February 21, 2025, as that was the date on which Plaintiff allegedly first experienced the internet service outage. *See* Compl., ¶ 1. Thus, Plaintiff's cause of action accrued on February 21, 2025. One year from the date of this alleged outage elapsed on February 21, 2026. Yet Plaintiff did not file the instant action until April 3, 2026—well after the expiration of the one-year limitations period under the MSA. *See generally id*. Plaintiff's action is therefore untimely and should be dismissed.

Colorado's three-year statute of limitations for breach of contract actions cannot rescue Plaintiff's claim because, "in the absence of a controlling statute to the contrary, a provision in a contract may validly limit, between the parties, the time for bringing an action on such contract to a period less than that prescribed in the general statute of limitations, provided that the shorter period itself shall be a reasonable period." *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 107 (2013) (quoting *Order of United Commercial Travelers of America v. Wolfe*, 331 U.S. 586, 608 (1947) (citations omitted)). In fact, Colorado law enforces contractual periods of limitations and courts will dismiss contractually time-barred claims. *See Siegle*, at *2-3 (dismissing complaint where one-year contractual limitations period, which overrode statutory period of limitations, had lapsed). Moreover, dismissal based on untimeliness is typically with prejudice. *Id*. (adopting magistrate judge's recommendation to dismiss complaint with prejudice);

13

*see also McGowan v. Wal-Mart Stores*, 757 Fed. App'x 786, 788 n.3 (10th Cir. 2019) ("A dismissal based on timeliness would ordinarily be with prejudice.") (citation omitted).

Here, there is no controlling statute to the contrary and at least one court applying Colorado law has found a one-year contractual time limitations period reasonable and enforceable. Therefore, because Plaintiff's claim cannot be amended to resolve the expiration of the MSA's one-year limitations period, the Complaint should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

### 3. Plaintiff's Claim is Barred by the Contract's "Force Majeure" Clause.

For similar reasons, Plaintiff's claim is also barred by the Force Majeure provision of the MSA which is incorporated by reference into the 2022 Service Order. Article 6.1 of the MSA provides that "Zayo [LLC] *shall not be liable* for loss or damage occasioned by a Force Majeure Event and to the extent allowed by law, for injury to or death of any person and for damage to or loss of any property arising out of or attributable to its operations and performance under this Agreement." Compl., Ex. A (emphasis added). Article 9, in turn, defines fire, among other catastrophes, as constituting a Force Majeure Event. *See id.* As alleged in the Complaint, the February 2025 outage was caused by a *fire* that occurred in an underground vault. Compl., ¶¶ 18-21. Despite pleading facts consistent with the occurrence of a Force Majeure Event, Plaintiff fails to acknowledge or address the fact that the MSA's force majeure provision expressly disclaims liability in the event of a fire. Nor has Plaintiff alleged any reason why that provision would not apply in these circumstances. Accordingly, Plaintiff's claim is barred for this reason as well.

### 4. The MSA Precludes Plaintiff from Establishing Damages.

The MSA both precludes the recovery of the damages Plaintiff seeks and also limits Plaintiff's recovery to "service outage credits." First, MSA Art. 6.2 provides in relevant part that,

14

> [e]xcept for a Party's indemnification obligations set forth below in Article 7 and except for claims arising from a Party's intentional misconduct, *in no event* shall either Party be liable to the other Party for any indirect, incidental, special, punitive or consequential damages whatsoever, arising out of, or in connection with, this Agreement, including but not limited to, *lost profits, lost revenue. . . whether in an action in contract or tort*, even if the other Party or any other person has been advised of the possibility of such damages.

Complaint at Ex. A (emphasis added).

Plaintiff simply ignores this provision, alleging that "SHRM incurred at least $385,000 in lost profit and revenue[,]" Compl., ¶ 1, and requesting that the Court "[a]ward[] SHRM compensatory damages in an amount sufficient to place Plaintiff in the position it would have occupied (and, in any event, at least **$385,000**) had Defendant performed its contractual obligations[,]" as well as a variety of other costs and expenses. *Id.*, ¶¶ 31-34 (emphasis in original). In doing so, Plaintiff impermissibly attempts an end run around Art. 6.2 of the MSA, which expressly precludes the recovery of such damages.

Second, under Article 4.2.1 of the MSA, "Customer's sole and exclusive remedy for any failure of Service is set forth in the applicable Service Schedule." *Id.*, Ex. A. Here, the applicable Service Schedule was executed in tandem with the MSA on August 15, 2013 and was incorporated into the MSA by reference. *See id.*, Ex. B. According to Section 8 of said Service Schedule, "Zayo [LLC] will issue Service Outage Credits and/or Service Credits to Customer for On-Net circuits affected by interruptions in Service, including Service Credits for Service Level Failures set forth above. . . ; provided, that any such interruption or failure of a service element will not be deemed a Service Outage if caused by: . . . (f) a Force Majeure Event." *Id.* Similarly, Section 8.1 provides that, "[i]n the event of a Service Outage not due to an Excused Outage, Customer shall be entitled to one of the service credits set forth in Section 7 herein ('Service Outage Credit')." *Id.* For all these reasons, Plaintiff cannot sustain the required element of damages. *See Diodosio*, 841 P.2d at 1058.

15

## V.    CONCLUSION

For all the foregoing reasons, Defendant Zayo Group Holdings, Inc. respectfully requests

that the Court dismiss the Complaint in this action with prejudice.

Date:   June 8, 2026                                    Respectfully submitted,

                                                        */s/ Thomas M. Craig*
                                                        Thomas M. Craig, Esq. (VSB #58063)
                                                        Amanda Z. Sin, Esq. (VSB #99552)
                                                        Michael J. O'Leary, Esq. (*pro hac vice forthcoming*)
                                                        **Fluet**
                                                        1751 Pinnacle Drive, Suite 1000,
                                                        Tysons, VA 22102
                                                        T: (703) 590-1234
                                                        F: (703) 590-0366
                                                        asin@fluet.law
                                                        moleary@fluet.law
                                                        tcraig@fluet.law

                                                        *Counsel for Defendant*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 8, 2026, a true and correct copy of the foregoing has been electronically filed with the Court via the Court's CM/ECF electronic filing system and served upon the following counsel of record registered with CM/ECF:

Samantha L. Brooks, Esq.
SEYFARTH SHAW LLP
975 F St NW
Washington, DC 20004
T: (202) 463-2400
F: (202) 641-9209
sbrooks@seyfarth.com

*/s/ Thomas M. Craig*
Thomas M. Craig, Esq.

17