**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

SOCIETY FOR HUMAN RESOURCE
MANAGEMENT

    Plaintiff,

       v.

ZAYO GROUP HOLDINGS, INC. and ZAYO
GROUP, LLC.

    Defendants.

Civil Action No. 1:26-cv-00914-AJT

**AMENDED COMPLAINT**

Society for Human Resource Management ("SHRM" or "Plaintiff") files this Amended Complaint seeking damages and attorneys' fees from Defendants Zayo Group Holdings, Inc. and Zayo Group, LLC. ("Zayo" or "Defendants").

**NATURE OF ACTION AND PARTIES**

1.      This is an action for damages brought by SHRM as a result of Defendants' failure to provide fiber internet services that SHRM relied upon to administer critical aspects of its business. Specifically, on February 21 through 22, 2025, as a result of Defendants' failure to provide adequate internet services, SHRM incurred at least $385,000 in lost profit and revenue.

2.      SHRM, an Ohio nonprofit corporation with its principal place of business in Alexandria, Virginia, is a non-profit professional association and the world's largest membership organization dedicated to the practice of human resources management. SHRM provides education, research, professional, and advocacy-related guidance and information to over 340,000 members in approximately 180 countries.

3.      Defendant Zayo Group Holdings, Inc., a Delaware corporation with its principal place of business in Boulder, Colorado, is an internet service provider that maintains fiber optic cables and provides high-speed data transmission services to customers.

4.      Defendant Zayo Group, LLC. a Delaware corporation with its principal place of business in Boulder, Colorado, is an internet service provider that maintains fiber optic cables and provides high-speed data transmission services to customers.

**JURISDICTION AND VENUE**

5.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because complete diversity of citizenship exists between the Plaintiff and Defendants and the amount in controversy exceeds $75,000, excluding interest and costs.

6.      This Court has personal jurisdiction over Defendants because Defendants transacted business within this judicial district and the actions necessitating the filing of this action occurred within this judicial district.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Plaintiff resides in this jurisdiction and a substantial part of the events necessitating the filing of this action occurred in this judicial district.

**FACTUAL ALLEGATIONS**

I.      *The Parties' Contractual Relationship and Dealing Between the Parties.*

8.      On a routine basis, SHRM conducts and promotes education, research, professional development, and advocacy-related programs through online platforms that are accessible to and attended by customers worldwide, for which SHRM charges registration and attendance fees.

9.      340,000-plus members rely on SHRM's online resources on a daily basis to support more than 362 million employees worldwide.

10.     To enable and support the online delivery of these programs to customers worldwide, SHRM first engaged Defendants as its internet service provider in September 2013, entering into a contractual relationship upon which SHRM relied to administer and host its online offerings. In initiating its contractual relationship with Defendants in September 2013, SHRM executed a Master Service Agreement ("MSA"), attached hereto as **Exhibit A**, a Service Schedule Agreement ("Service Schedule"), attached hereto as **Exhibit B**, and a Service Order Form ("2013 Order Form") attached hereto as **Exhibit C**.

11.     As part of the MSA, the Parties agreed, in Section 10, to provisions governing termination and assignment of the MSA:

> **Subject to Laws**. This Agreement is subject to all applicable federal, state and local laws, and regulations, rulings, and orders of governmental agencies, including, but not limited to, the Communications Act of 1934, as amended, the Telecommunications Act of 1996, the Rules and Regulations of the Federal Communications Commission ("FCC"), Zayo's applicable tariffs, if any, and the obtaining and continuance of any required approval or authorization of the FCC or any governmental body. Either Party may terminate its obligations under this Agreement and/or a Service Schedule and/or a Service Order without liability if ordered to do so by the final order or ruling of a court or other government agency or if such order or ruling would make it impossible for either Party to carry out its obligations under this Agreement.

> **Relationship of Parties**. This Agreement does not create a partnership, joint venture or agency relationship between the Zayo and Customer. Neither Party shall have any authority to bind the other Party to any agreement, understanding or other instrument, in any manner whatsoever.

> **Assignment; Binding Effect**. Customer shall not transfer or assign, voluntarily or by operation of law, its obligations under this Agreement with the prior written consent of Zayo. This MSA shall be binding upon and inure to the benefit of the Parties hereto and their respective successors and assigns. Each of the undersigned hereby state that he/she has full authority to enter into this MSA and hereby accepts this MSA on behalf of the companies identified below.

> *See* Ex. A at Article 10.1, 10.4, and 10.5.

12.     Consistent with these provisions, on May 31, 2018, SHRM sent Defendants a written notice of termination, attached hereto as **Exhibit D**, pursuant to Section 10 of the Agreement, expressly informing Defendants that SHRM was terminating both the Agreement and the Service Order Form.

13.     On May 25, 2022, SHRM and Defendants entered into a new Order Form (the "2022 Order Form"), attached hereto as **Exhibit E**, pursuant to which Defendants agreed to provide internet services to SHRM. That agreement was signed by Ms. Lynn D. Tinney on behalf of Defendants by Ms. Lynn D. Tinney, who upon information and belief, served as Senior Vice President for Defendant Zayo Group Holdings, Inc. *See* **Exhibit F**.

14.     Pursuant to the 2022 Order Form, Defendants agreed, in exchange for payment of $1,500 per month, to provide SHRM with Standard 10G internet service.

15.     The Terms and Conditions incorporated into the 2022 Order Form further provided as follows: "If Customer has not executed an Agreement and/or no Agreement is referenced in this Customer Order, then this Customer Order shall be governed by the terms and conditions of Zayo's Master Customer Agreement and applicable Customer Schedule in effect as of the date of this Customer Order, incorporated herein by this reference and available upon request."

16.     As part of the 2022 Order Form, under the "Contract Details," Defendants identified the Master Services Agreement ("MSA") as governing the Parties' relationship, even though SHRM had previously terminated the MSA such that it was no longer in effect as of the date of the 2022 Order Form.



17.     Other than the 2022 Order Form, SHRM did not enter into any written or oral agreement with Defendants.

**II.     *Defendants' Failure to Provide Adequate Service in Breach of Agreement.***

18.     Starting on February 21, 2025, at 10:47 a.m., Defendants had an internet service provider outage in the Washington, D.C., Virginia, and Maryland area.

19.     Defendants were unable to resolve the internet service provider outage until February 22, 2025.

20.     According to Defendants, that outage was a result of a fire occurring in an underground vault. Upon information and belief, the underground vault at issue is on premises owned, leased, or otherwise controlled by Defendants and over which it had a duty to exercise reasonable measures to prevent fires like the one that resulted in the February 21-22 internet service outage.

21.     As a result of Defendants' internet service provider outage, SHRM's 340,000-plus members nationwide, as well as its own staff, were unable to access critical network resources, resulting in significant loss of profit and revenue that SHRM reasonably expected to earn from the sale of its online resources.

22. Despite efforts made by SHRM to seek reimbursement for the damages caused, Defendants have refused to compensate SHRM for the damages incurred.

### COUNT 1 – Breach of Contract (2022 Order Form)

23. SHRM re-alleges Paragraph 1-22 above and incorporates them as if duly set forth herein.

24. SHRM and Defendants entered into a valid and binding contract, the 2022 Order Form, supported by adequate consideration.

25. SHRM fully performed its obligations under the 2022 Order Form by timely paying all required monthly fees, in exchange for which Defendants were obligated to provide continuous internet service.

26. Defendants breached the contract by failing to provide internet service on February 21 through 22, as required under the 2022 Order Form.

27. As a result of Defendants' internet service provider outage, its 340,000-plus members and its staff were unable to access its online resources.

28. Defendants' breach deprived Plaintiff of the benefit of its bargain and caused Plaintiff to incur losses and expenses that would not otherwise have been incurred.

29. Indeed, based on its historic revenue data for the same time period, SHRM had a reasonable expectation of obtaining significant revenue from fees it charges for its online resources, and it was reasonably foreseeable that Defendants' breach of its contractual obligations would result in SHRM's loss of revenue from the sale of its online resources.

30. As a direct and proximate result of Defendants' failure to provide SHRM with internet service during the internet service outage, SHRM lost profit and revenue that it otherwise would have earned, including lost profit and revenue in the amount of at least $385,000.

## REQUEST FOR RELIEF

**WHEREFORE**, SHRM respectfully requests that the Court enter judgment in its favor and against Defendants as follows:

31. Awarding SHRM compensatory damages in an amount sufficient to place Plaintiff in the position it would have occupied (and, in any event, at least **$385,000**) had Defendants performed its contractual obligations.

32. Awarding SHRM pre- and post-judgment interest.

33. Awarding SHRM all expenses and fees and other costs available.

34. Awarding such other and further relief as the Court deems just and proper.

(SIGNATURES ON FOLLOWING PAGE)

DATED:  June 25, 2026

Respectfully submitted,

SEYFARTH SHAW LLP


By: */s/ Samantha L. Brooks*

Samantha L. Brooks (VSB No. 91928)
SEYFARTH SHAW LLP
975 F St. NW
Washington, DC 20004
sbrooks@seyfarth.com
Telephone: (202) 828-3560
Facsimile: (202) 828-5393

Daniel P. Hart (to be admitted *pro hac vice*)
Georgia Bar No. 141679
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E.
Suite 2500
Atlanta, GA 30309
dhart@seyfarth.com
Telephone: (404) 885-1500
Facsimile: (404) 892-7056

Mitchell A. Robinson (to be admitted *pro hac vice*)
mrobinson@seyfarth.com
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E.
Suite 2500
Atlanta, Georgia  30309-3958
Telephone:  (404) 885-1500
Facsimile:  (404) 892-7056

ATTORNEYS FOR PLAINTIFF

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

SOCIETY FOR HUMAN RESOURCE
MANAGEMENT

    Plaintiff,

       v.

ZAYO GROUP HOLDINGS, INC. and ZAYO
GROUP, LLC.

    Defendants.

Civil Action No.  1:26-cv-00914-AJT

**<u>CERTIFICATE OF SERVICE</u>**

       I hereby certify that I caused the foregoing *Amended Complaint* to be filed on June 25,

2026, via ECF to the following counsel of record:

Thomas Mitchell Craig
Amanda Zin Ming Sin
Michael Joseph O'Leary
Fluet & Associates, PLLC
1751 Pinnacle Drive - Suite 1000
Tysons, VA 22102

                                   */s/ Samantha L. Brooks*
                                   Samantha L. Brooks